FILED

SEP 08 2023

UNITED STATES
STEVEN C. SEEGER
DISTRICT JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

WILLIAM MUNDY

No. 22 CR 165-2

Hon. Steven C. Seeger

## PLEA AGREEMENT

1.      This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant WILLIAM M. MUNDY, and his attorney, PATRICK W. BLEGEN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.      The superseding indictment in this case charges defendant with conspiracy to commit bribery, in violation of Title 18, United States Code, Section 371 (Count One) and filing a false tax return, in violation of Title 26, United States Code, Section 7206(1) (Count Four).

3.      Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment: Count One, which charges defendant with conspiracy to commit bribery, in violation of Title 18, United States Code, Section 371, and Count Four, which charges defendant with filing a false tax return, in violation of Title 26, United States Code, Section 7206(1). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Four of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, constitute relevant conduct pursuant to Guideline § 1B1.3, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.      With respect to Count One of the superseding indictment:

Beginning on or about March 20, 2017, and continuing until on or about March 23, 2017, at Summit, in the Northern District of Illinois, Eastern Division, and elsewhere, WILLIAM MUNDY conspired with John Kosmowski and other persons known and unknown, to corruptly accept and agree to accept from another person a thing of value, namely, a monetary payment, for the benefit of Kosmowski and MUNDY, intending to be influenced and rewarded in connection with any business,

2

transaction, and series of transactions of the Village of Summit involving anything of value of $5,000 or more, namely, the transfer of the Business 1 liquor license to another individual, in violation of Title 18, United States Code, Section 666(a)(1)(B), all in violation for Title 18 United States Code, Section 371.

Specifically, the Village of Summit (the "Village") was a unit of local government located in the Northern District of Illinois that received in excess of $10,000 in federal benefits during the period from January 1, 2017 to December 31, 2017. The Summit Police Department and the Building Department were agencies of the Village. Businesses that sold or maintained liquor on business premises in the Village needed to apply for and receive a liquor license from the Village on an annual basis.

MUNDY was a building inspector with the Building Department and Kosmowski, was the Chief of Police of the Village. Individual A was associated with Business 1, which operated in the Village. Individual A's family member held a license authorizing Business 1 to sell and serve alcoholic beverages (the "Business 1 liquor license"). Individual B was an elected official of the Village who exercised discretionary authority to authorize or transfer liquor licenses for businesses within the Village.

Between on or about March 20, 2017, and continuing through on or about March 27, 2017, MUNDY agreed with Kosmowski and others to corruptly accept from Individual A things of value, namely, approximately $10,000, intending that

3

MUNDY, Kosmowski, and Individual B be influenced and rewarded in connection with any business, transaction, and series of transactions of the Village involving a thing of value of $5,000 or more, namely, the transfer of the Business 1 liquor license to another individual.

As part of the conspiracy, in or around March 2017, MUNDY and Kosmowski agreed to accept and accepted approximately $10,000 from Individual A, knowing that Individual A offered the money so that MUNDY and Kosmowski would induce Individual B to authorize the transfer of the Business 1 liquor license to another person. After agreeing to accept the money from Individual A, on or about March 20, 2017, MUNDY called Individual B for the purpose of influencing and causing Individual B to approve the transfer of the Business 1 liquor license to another person. Later that same day, MUNDY called Individual A and told Individual A to begin preparing the paperwork needed for the transfer of the Business 1 liquor license. MUNDY acknowledges that, on or about March 23, 2017, Kosmowski received more than $5,000 in cash from Individual A. That same day, Kosmowski transferred a portion of the cash that Kosmowski received from Individual A to MUNDY. MUNDY accepted this money knowing that Individual A provided it for the purpose of corruptly influencing and rewarding both MUNDY and Kosmowski in connection with the transfer of the liquor license.

MUNDY also engaged in corrupt activities with other public officials and accepted money from other people in return for using his official position in the

4

Village in an to attempt to benefit those people and their business interests. In total, MUNDY agreed to accept multiple bribe payments that totaled over approximately $40,000 over a period of years ending in or around 2019.

b.      With respect to Count Four of the superseding indictment:

On or about April 6, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, MUNDY willfully made and subscribed, and caused to be made and subscribed, a United States Individual Income Tax Return (Form 1040 with schedules and attachments) for the calendar year 2017, which return was verified by written declaration that it was made under penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material mater, in that said return reported on Line 22 that the total income was $167,699, when defendant knew that the total income substantially exceeded that amount, in violation of Title 26, United States Code, Section 7206(1).

Specifically, in 2017, MUNDY had total income of at least $172,699, over $5,000 of which was from criminal activity, namely, bribery. MUNDY retained an accountant to prepare his tax returns but did not advise the accountant of his receipt of a cash bribe. MUNDY caused the accountant to file his tax return, with the IRS, knowing that his tax return was materially false in that it failed to include the income he received from bribes. This conduct caused a loss to the IRS of at least $1,250 and loss to the Illinois Department of Revenue of at least $188.

5

MUNDY also caused the filing of a false U.S. Individual income tax return for tax year 2018 in which he knowingly underreported his income. This conduct caused a loss to the IRS of at least approximately $1,650 and to the Illinois Department of Revenue of at least approximately $371.

Therefore, MUNDY's charged and related tax offenses resulted in losses to the IRS of at least approximately $2,900, losses to the Illinois Department of Revenue of at least approximately $559, and a total tax loss of at least approximately $3,459.

7. The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and they are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a. Count One carries a maximum sentence of 5 years' imprisonment. Count One also carries a maximum fine of $250,000. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

b. Count Four carries a maximum sentence of 3 years' imprisonment. Count Four also carries a maximum fine of $250,000. Defendant further understands that the Court must order costs of prosecution, estimated not to

exceed $500. Defendant further understands that with respect to Count Four, the judge also may impose a term of supervised release of not more than one year.

c.  Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

d.  Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 8 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, mandatory costs of prosecution, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

## Sentencing Guidelines Calculations

9.  Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most-effective manner; (iii) the kinds of sentences

7

available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

10.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the November 2021 Guidelines Manual.

b.    **Offense Level Calculations.**

i.    **Count One (Group One)**

(a)    Pursuant to Guideline § 2X1.1 and § 2C1.1(a)(1) the base offense level is 14, because defendant was a public official.

(b)    Pursuant to Guideline § 2C1.1(b)(1), a 2-level increase is appropriate because the offense and relevant conduct involved more than one bribe.

(c)    Pursuant to Guideline §§ 2C1.1(b)(2) and 2B1.1(b)(1)(D), a 6-level increase is appropriate because the value of the payments was more than $40,000, but less than $95,000.

(d)     Pursuant to Guideline § 2C1.1(b)(3), a 4-level increase is appropriate because the offense involved an elected public official and a public official in a high-level decision-making or a sensitive position. The defense reserves the right to contest the application of this enhancement as a legal matter.

ii.     **<u>Count Four (Group Two)</u>**

(a)     Pursuant to Guideline §§ 2T1.1(a)(1) and 2T4.1(B), the base offense level is 8 because the tax loss was approximately $3,459, which is more than $2,500, but less than $6,500.

iii.     Pursuant to Guideline § 3D1.2, the offenses are not grouped. The group with the highest offense level (Group One) has an offense level of 26. Pursuant to Guideline § 3D1.4(c), there is no increase in the offense level because Group Two has an offense level, which is nine or more levels less serious than Group One.

iv.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

v.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.  **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero, and defendant's criminal history category is I.

d.  **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 23, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 46 to 57 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.  Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and they are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead

the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation, that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.    Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B) and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

**Cooperation**

11.    Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial

11

preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

**Agreements Relating to Sentencing**

12. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable Guideline range in an amount to be determined by the government at the time of sentencing. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

13. If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

14. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15. Regarding restitution, defendant agrees to pay restitution in the amount of $3,459, consisting of $2,900 to the United States Treasury and $559 to the Illinois Department of Revenue, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664.

16. Defendant understands that the amount of tax loss as calculated by the IRS may exceed the amount of tax due as calculated for restitution in the criminal case. Defendant further understands that the IRS may use the restitution order as a basis for civil assessment pursuant to Title 26, United States Code, Section 6201(a)(4). Defendant does not have the right to challenge the amount of this restitution-based assessment. *See* 26 U.S.C. § 6201(a)(4)(C).

17. Restitution shall be due immediately and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution. Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule

13

will preclude the IRS from immediately collecting the full amount of the restitution-based assessment. Interest on the restitution-based assessment to the date that the IRS receives full payment.

18. Defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. Defendant understands and agrees that the plea agreement does not resolve the Defendant's civil tax liabilities, that the IRS may seek additional taxes, interest and penalties from Defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise Defendant's obligation to pay any remaining civil tax liability. Defendant authorizes release of information to the IRS for purposes of making the civil tax and restitution-based assessments.

19. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

20. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

## Forfeiture

21. Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

22. In addition, defendant agrees to the entry of a forfeiture money judgment in the amount of $5,000. The defendant agrees that the amount of the forfeiture money judgment represents property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of defendant's violation of Title 18, United States Code, Section 371. Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the forfeiture money judgment he will be ordered to pay.

23. Defendant admits that because the directly forfeitable property is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the forfeiture money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

24. Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

25. Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

26. This Agreement is entirely voluntary and represents the entire agreement between the Acting United States Attorney and defendant regarding defendant's criminal liability in case 22 CR 165.

27. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

28. Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest, or penalties from

defendant and his ex-spouse. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

## Waiver of Rights

29. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him,

17

unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii.     With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b.     **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a

reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

30. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained to him those rights and the consequences of his waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

31. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

32. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information,

20

may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

33. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

34. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

35. Regarding matters relating to the Internal Revenue Service, defendant agrees as follows (nothing in this paragraph, however, precludes defendant and his ex-spouse from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS): Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant and his ex-spouse which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

36. Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony, and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant and his ex-spouse.

Nothing in this paragraph or the preceding paragraph precludes defendant and his ex-spouse from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

37. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

38. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

39. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in

accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

40. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void, and neither party will be bound to it.

41. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

42. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: 9/8/23

MORRIS PASQUAL
Acting United States Attorney

WILLIAM M. MUNDY
Defendant

TIFFANY A. ARDAM
Assistant United States Attorney

PATRICK W. BLEGEN
Attorney for Defendant

24